**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 15** |
| **Awal Finance Company (No. 5) Limited,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |
| **In re:** | : | **Chapter 15** |
| **Awal Master Fund,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |
| **In re:** | : | **Chapter 15** |
| **Awal Feeder 1 Fund Limited,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |
| **In re:** | : | **Chapter 15** |
| **Awal Finance Company Limited,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |
| **In re:** | : | **Chapter 15** |
| **Awal Finance Company (No. 3) Limited,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |
| **In re:** | : | **Chapter 15** |
| **Awal Finance Company (No. 3) Limited,** | : | **Case No. 15-** |
| Debtor in a Foreign Proceeding. | : | |

| | |
|---|---|
| In re: | Chapter 15 |
| Awal Finance Company (No. 4) Limited, | Case No. 15- |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF BRUCE ALEXANDER MACKAY IN
SUPPORT OF THE JOINT VERIFIED PETITION FOR RECOGNITION
UNDER CHAPTER 15 AND RELIEF UNDER 11 U.S.C. § 1521**

I, Bruce Alexander Mackay (the "Petitioner"), in my capacity as a joint official liquidator and duly appointed foreign representative of the above captioned debtors (the "Debtors" or the "AwalCo Entities") pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1. I am a resident of London, England and a partner at Baker Tilly Restructuring and Recovery LLP (the UK member firm of RSM International Limited). I am a Fellow of the Association of Chartered Certified Accountants, an affiliate member of the Institute of Chartered Accountants in England and Wales ("ICAEW"), a member of the Association of Business Recovery Professionals (R3), and a UK-licensed insolvency practitioner (licensed by the ICAEW). I am also affiliated with INSOL International (through RSM International's membership in the INSOL G36).

2. I have been qualified to be appointed in relation to formal insolvency procedures by the ICAEW since 1986-1987, and have been a partner and licensed insolvency appointment-taker since 1992-1993. I have a wealth of corporate insolvency experience, including cross-border, contentious appointments.

2

3. On November 16, 2009, I was appointed as one of the joint official liquidators ("JOLs") of the Debtors.[1] As explained in more detail below, the Debtors are the subject of bankruptcy procedures (the "Cayman Islands Proceedings") under Part V of the Companies Law of the Cayman Islands (2013 Revision) (the "Cayman Companies Law"), currently pending before the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Islands Court").

4. I submit this declaration in support of the Joint Verified Petition for Recognition and Chapter 15 Relief (the "Recognition Petition"),[2] which I, in my capacity as a JOL and foreign representative of the Debtors, along with my co-Petitioners, have contemporaneously filed with this Court seeking recognition of the Cayman Islands Proceedings as "foreign main proceedings" or, in the alternative, "foreign nonmain proceedings," and related relief under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"). The facts hereinafter set forth in this declaration are based upon my personal knowledge or, as indicated below, based upon my investigation of the books and records of the Debtors or from other sources that I consider to be reliable.

5. I respectfully seek entry of an order (the "Recognition Order") recognizing the Cayman Islands Proceedings as "foreign main proceedings" as defined in 11 U.S.C. §§ 1502(4) and 1517(b)(1) or, in the alternative, as "foreign nonmain proceedings" as defined in 11 U.S.C. §§ 1502(5) and 1517(b)(2). I also request that this Court grant me, as well as Christopher

---

[1] The seven Debtors, along with the last four digits of each Debtor's registration number, are: Awal Master Fund (8344); Awal Feeder 1 Fund Limited (8345); Awal Finance Company Limited (2434); Awal Finance Company (No. 2) Limited (6834); Awal Finance Company (No. 3) Limited (6837); Awal Finance Company (No. 4) Limited (4954); and Awal Finance Company (No. 5) Limited (6754). The mailing address of the Debtors' Registered Office is c/o Chris Johnson Associates, Elizabethan Square, 80 Shedden Road, George Town Grand Cayman KY1-1104, Cayman Islands.

[2] Any capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Recognition Petition.

3

Dorrien Johnson, Russell Homer, and Geoffrey Lambert Carton-Kelly (collectively, the "Petitioners"), as the JOLs and foreign representatives of the Debtors, (i) the authority to conduct necessary discovery pursuant to 11 U.S.C. § 1521(a)(4), and (ii) entrustment of the administration and realization of all of the Debtors' assets within the territorial jurisdiction of the United States, pursuant to 11 U.S.C. § 1521(a)(5). Under the auspices of the Cayman Islands Court and with the ancillary assistance of this Court, the ultimate goals of the Cayman Islands Proceedings are to liquidate the assets of the Debtors in a manner that maximizes the recoveries for all creditors, wherever located, and to determine the current claims that exist to those assets and to distribute the proceeds to creditors in accordance with the Cayman Companies Law. To effectuate this goal, I respectfully request the relief requested in the Recognition Petition.

6.   I am advised by counsel that Chapter 15 recognition requires that a petition must be brought by a "foreign representative" of a "foreign proceeding" as such terms are defined in, respectively, sections 101(24) and 101(23) of the Bankruptcy Code. I am further aware that in order to be recognized under Chapter 15 as a foreign main proceeding or a foreign nonmain proceeding, sufficient evidence must be shown that the foreign proceeding is either pending in the debtor's "center of main interests" ("COMI") or where the debtor has an "establishment," in each case as these requirements have been interpreted for purposes of Chapter 15 recognition.

7.   Part I of this declaration provides evidence regarding the corporate structure of the Debtors, their corporate governance, an overview of their historical business operations, and the background leading to up the commencement of the Cayman Islands Proceedings. Part II provides evidence regarding the Debtors' assets and liabilities and an overview of the claims and causes of action pending against the Debtors. Part III provides an explanation of the Debtors' need for recognition and the relief being requested. Part IV highlights the evidence in support of

4

a determination that I am one of the Debtors' duly authorized foreign representatives, that the other Petitioners are duly authorized foreign representatives of the Debtors and that the Cayman Islands Proceedings are foreign proceedings. Part V highlights the key evidence supporting a determination that the Debtors' COMI is in the Cayman Islands.

I. **BACKGROUND TO THE DEBTORS' CAYMAN ISLANDS PROCEEDINGS**

    A. **The Debtors' Corporate Structure**

8. On December 1, 2006, Awal Bank, BSC ("Awal Bank"), a foreign banking corporation in administration (as described below) in the Kingdom of Bahrain, organized Debtor Awal Master Fund ("AMF") as an unrestricted company under the laws of the Cayman Islands. See AMF Memorandum and Articles of Association, attached hereto as **Exhibit A**. AMF's status as a corporation registered under Cayman Islands law has never changed. As of February 15, 2015, AMF held approximately $79 million of liquidated assets, under the control and custody of the JOLs, in major financial institutions in the Cayman Islands. AMF holds only one unliquidated asset in the form its interest in the Touradji Private Equity Offshore Fund Ltd hedge fund, which is located at 101 Park Avenue, 48th Floor, New York, NY 10178, and associated distributions. These interests are 100% owned by AMF, and have an approximate reported net asset value of $986,000. AMF is 100% owned by AF1F (as defined below), which is in turn 100% owned by Awal Bank.

9. On December 1, 2006, Awal Bank organized Debtor AWAL Feeder 1 Fund Limited ("AF1F") as a corporation under the laws of the Cayman Islands. See AF1F Amended Memorandum and Articles of Association, attached hereto as **Exhibit B**. AF1F is as a special purpose vehicle established to hold a 100% equity interest in AMF. As of the filing of the Recognition Petition, AF1F has no holdings other than its equity interest in AMF. AF1F's status

5

as a corporation registered under Cayman Islands law has never changed. AF1F is 100% owned by Awal Bank.

10. On August 14, 2006, Awal Bank organized Debtor Awal Finance Company Limited ("AFCL") as a corporation under the laws of the Cayman Islands. See AFCL Memorandum and Articles of Association, attached hereto as **Exhibit C**. AFCL's status as a corporation registered under Cayman Islands law has never changed. On August 29, 2008, AFCL sold its entire investment portfolio to JP Morgan Securities Ltd. for $545 million. As of the filing of the Recognition Petition, the only material asset held by AFCL is a $24.3 million loan owed by Awal Bank. AFCL is 100% owned by Awal Bank.

11. On November 6, 2006, Awal Bank organized Debtor Awal Finance Company (No. 2) Limited ("AFCL2") as a corporation under the laws of the Cayman Islands. See AFCL2 Memorandum and Articles of Association, attached hereto as **Exhibit D**. As of February 15, 2015, AFCL2 held approximately $59 million of liquidated assets, under the control and custody of the JOLs, in major financial institutions in the Cayman Islands. AFCL2's status as a corporation registered under Cayman Islands law has never changed. AFCL2 is 100% owned by Awal Bank.

12. On November 6, 2006, Awal Bank organized debtor Awal Finance Company (No. 3) Limited ("AFCL3") as a corporation under the laws of the Cayman Islands. See AFCL3 Memorandum and Articles of Association, attached hereto as **Exhibit E**. AFCL3 is a special purpose investment vehicle established to hold specific investment securities. During the two months following its organization AFCL3 purchased investment securities in the amount of $73.7 million. Through December 31, 2008, AFCL3 reported investment losses of approximately $52 million. The JOLs are in the process of investigating these losses. As of

February 15, 2015, AFCL3 held no unliquidated assets and *de minimus* liquidated assets. AFCL3's status as a corporation registered under Cayman Islands law has never changed. AFCL3 is 100% owned by Awal Bank.

13.    On April 20, 2004, Saad Investments Company Limited ("SICL") established Saad Investments Finance Company (No. 4) Limited as an unrestricted company under the laws of the Cayman Islands. See AFCL4 Memorandum and Articles of Association, attached hereto as **Exhibit F**. On November 10, 2007, SICL transferred ownership of the entity to Awal Bank, and changed the name of the entity to Awal Finance Company (No. 4) Limited ("AFCL4"). See AFCL4 Certificate of Incorporation of Change of Name, attached hereto as **Exhibit G**. On August 29, 2008, AFCL4 sold all of its investment securities to JP Morgan Bank and JP Morgan Securities Ltd. for $384 million. As of the filing of the Recognition Petition, the only material asset retained by AFCL4 is a $19 million loan owed by SICL. AFCL4's status as a corporation registered under Cayman Islands law has never changed. AFCL4 is 100% owned by Awal Bank.

14.    On November 3, 2006, SICL established Saad Investments Finance Company (No. 6) Limited as an unrestricted company under the laws of the Cayman Islands. See AFCL5 Memorandum and Articles of Association, attached hereto as **Exhibit H**. On November 10, 2007, SICL transferred ownership of the entity to Awal Bank, and changed the name of the entity to Awal Finance Company (No. 5) Limited ("AFCL5"). See AFCL5 Certificate of Incorporation of Change of Name, attached hereto as **Exhibit I**. AFCL5's status as a corporation registered under Cayman Islands law has never changed. AFCL5 is a special purpose investment vehicle established to invest in hedge funds. As of February 15, 2015, AFCL5 held approximately $75 million in liquidated assets, under the control and custody of the JOLs, in major financial institutions in the Cayman Islands. AFCL5 is 100% owned by Awal Bank.

7

B.   **The Debtors' Registered Office and Corporate Governance**

15. The Debtors' registered office (the "Registered Office") is located at c/o Chris Johnson Associates, Elizabethan Square, 80 Shedden Road, George Town Grand Cayman KY1-1104, Cayman Islands. It is from this Registered Office where the Cayman-based Petitioners have overseen the governance and management of the Debtors, starting in 2009 and continuing throughout the liquidation proceedings.[3]

16. Prior to the commencement of the Cayman Islands Proceedings, the Debtors had a registered office at the offices of Maples & Calder, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands, where they maintained their corporate books and company registers. See Transfers of Registered Office, attached hereto as **Exhibit J**. The Debtors do not have any offices or places of business other than the Registered Office.

17. At all times, the Debtors have maintained their statutory books and records in the Cayman Islands.

18. From the time of the entry of the Supervision Orders (as defined below) in November 2009, the sole business of the Debtors has been their winding up and liquidation, which activities are based in the Cayman Islands and include the collection, procurement, management, and administration of the Debtors' assets by the Petitioners. All of this business and all of these activities have been directed by the Petitioners under the supervision of the Cayman Islands Court. To my knowledge, since the Petitioners' appointment, no other person than the Petitioners has otherwise exercised the right or power to administer the interests, business or assets of the Debtors.

---

[3] Although two of the Petitioners are London residents, their activities on behalf of the AwalCo Entities have included a number of visits to the Cayman Islands, either for case management discussions with the Cayman Islands-based Petitioners and legal advisors, court attendance, or a combination of both.

8

**C.    Employees**

19. The Debtors currently do not independently retain any employees or staff. The day-to-day operations of the Debtors are managed primarily from the Cayman Islands by the employees and staff of Chris Johnson Associates Ltd. ("CJA") (the firm of Petitioner Christopher Dorrien Johnson), all of whom work out of the Cayman Islands. The JOLs are represented in legal matters by HSM Chambers a law firm located in the Cayman Islands.

**D.    The Debtors' Business Operations Prior to Liquidation**

20. Each of the AwalCo Entities was established as a special purpose investment vehicle, designed to hold specific investment securities and/or to invest in hedge funds. In particular:

- Debtor AMF was established with 'unrestricted objects' for the purpose of investing in a portfolio of hedge funds.

- Debtor AF1F was established with 'unrestricted objects' for the purpose of arranging long term financing through Goldman Sachs in order to invest in the participating shares of AMF.

- Debtor AFCL was established with 'unrestricted objects' for the purpose of arranging long term financing through JPMorgan Chase Bank, National Association ("JPM Bank") in order to invest in a specific portfolio of investment securities. Additional financing for investments was provided by Awal Bank.

- Debtor AFCL2 was established with 'unrestricted objects' for the purpose of arranging long term financing through Citibank in order to invest in a specific portfolio of investment securities.

- Debtor AFCL3 was established with 'unrestricted objects' for the purpose of investing in a portfolio of investment securities using loan financing from Awal Bank.

- Debtor AFCL4 was established with 'unrestricted objects' for the purpose of arranging long term financing through JPM Bank in order to invest in a specific portfolio of investment securities.

- Debtor AFCL5 was established with 'unrestricted objects' for the purpose of arranging long term financing through Citibank in order to invest in a specific portfolio of investment securities.

### E. Events Leading to the Cayman Islands Proceedings

21. The Central Bank of Bahrain ("CBB") is the government entity responsible for regulating the financial services industry in Bahrain. See Decree Law No. 64 of 2006, the Central Bank of Bahrain and Financial Institutions Law ("CBBFIL"), art. 4(4). By Resolution No. 38 of 2009, dated July 30, 2009, the Governor of the CBB, acting under the authority of the CBBFIL, placed Awal Bank in administration, thereby commencing insolvency proceedings in Bahrain ("Awal Foreign Proceeding"). By Resolution No. 44 of 2009, dated August 13, 2009, the Governor of the CBB appointed Charles Russell LLP (n/k/a Charles Russell Speechlys LLP) ("Charles Russell Speechlys"), based in London, England, to serve as External Administrator of Awal Bank.

22. As part of the External Administrator's efforts to equitably administer Awal Bank's worldwide assets pursuant to the Foreign Proceeding's supervision, on September 30, 2009, the External Administrator, as Awal Bank's foreign representative, filed a Verified Petition For Recognition Of Foreign Proceeding And Motion For Provisional Relief, thereby commencing a case under Chapter 15 of the Bankruptcy Code. Shortly thereafter, on October 27, 2009, this Court signed an order granting the Foreign Proceeding recognition as a foreign main proceeding.

23. On September 28, 2009, Awal Bank, as the sole shareholder of the Debtors, held an extraordinary general meeting at the offices of Charles Russell Speechlys in Manama, Bahrain. At that meeting, Charles Russell Speechlys, as acting External Administrator of Awal Bank, made a special resolution that the Debtors were to be voluntarily wound up, and that an application would be made to the Cayman Islands Court for supervision. See Written Special Resolutions attached hereto as **Exhibit K**.

24. On November 16, 2009, the Cayman Islands Court entered orders commencing the Cayman Islands Proceedings and appointing the Petitioners as the AwalCo Entities' JOLs under section 105 of Part V of the Cayman Companies Law (the "Supervision Orders," attached to the Recognition Petition as Exhibit B).

25. The Supervision Orders granted Petitioners the sanction of the bankruptcy court to, *inter alia*: (i) take possession of the property of the Debtors; (ii) do all acts and execute deeds, receipts and other documents on behalf of the Debtors; (iii) bring or defend legal proceedings on behalf of the Debtors; (iv) carry on the business of the Debtors; (v) dispose of any property of the Debtors; (vi) make compromises and arrangements with creditors; and (vii) raise and borrow money and grant securities over the property of the Debtors. See Supervision Orders at ¶¶ 4(a), 5.

F.    **Communications with Creditors**

26. The Cayman Islands Proceedings have at all times been conducted in the Cayman Islands, under the supervision of the Cayman Islands Courts, with the Cayman Islands-and London-based Petitioners acting as JOLs in those proceedings. All notices to creditors since entry of the Supervision Orders in 2009 (over five years ago) related to the Cayman Islands Proceeding have identified that all of the Debtors' activities, including, without limitation, the liquidation proceedings are centered in the Cayman Islands. For example, on October 7, 2009, the Petitioners, acting in their roles as official liquidators, published notices of the foreign proceedings in the Cayman Islands, which included their contact information and address in the Cayman Islands. Likewise, on November 20, 2009, the Petitioners served a notice to creditors of their appointment as official liquidators. Following their appointments, the JOLs held a meeting of the Debtors' creditors at the offices of the JOLs' Cayman Islands counsel in the Cayman

11

Islands. Creditors' meetings continue to be held annually (or more frequently). The next creditors' meeting is scheduled for April 29, 2015 in the Cayman Islands.

27.    Between November 3, 2011, and February 1, 2012, a liquidation committee was formed in the Cayman Islands for each of the Debtors, consisting of a JOL representative and the largest creditors of each Debtor (the "Liquidation Committees"). At this point in time, only four creditors have claims outstanding against the AwalCo Entities: Awal Bank; SICL; Saad Investments Finance Company Limited ("SIFCL"); and Ahmad Hamad Algosaibi and Brothers Company ("AHAB"). Each of those creditors is a member of one or more of the Liquidation Committees.

28.    The Liquidation Committees take a consultative role, acting as confidential advisors to the JOLs regarding strategy, decision-making and intentions. The JOLs must give notice to the Liquidation Committee members of any application by the JOLs for the Cayman Islands Court's "sanction" of the exercise of any power for which such sanction is needed. The Liquidation Committee members can also attend the hearing on any such application.

29.    The Liquidation Committees meet at least once every six months (the JOLs' Cayman Islands attorneys, HSM Chambers, also communicates with the members of the Liquidation Committees informally via e-mail, telephone and in person). The initial and all subsequent meetings of the Liquidation Committees have taken place in the Cayman Islands, at the offices of Bodden & Bodden (the JOLs' original Cayman Islands counsel) or HSM Chambers. The meetings have historically been, and continue to be, chaired by Petitioner Russell Homer, a senior associate of CJA located in the Cayman Islands. He is represented at the meetings by Ian Lambert of HSM Chambers. The next meetings of the Liquidation Committees are scheduled for April 29, 2015.

## II. THE DEBTORS' ASSETS AND LIABILITIES

### A. Assets

30. Following entry of the Supervision Orders, the Petitioners, under their authority as JOLs, engaged in a thorough investigation of each AwalCo Entity. Through this investigation the Petitions were able to identify, and effect the liquidation of, substantially all of the Debtors' assets, an aggregate amount of approximately $230 million. The Debtors' assets were then transferred to accounts in the names of the Debtors and under the control of the JOLs at three major financial institutions located in the Cayman Islands. Under the authority of the Petitioners, approximately $17 million of these funds have been expended in the liquidation, with approximately $213 million remaining.

31. As of February 15, the tangible, liquid assets of the Debtors are as follows:

| Holder | Location | Amount (USD) |
|---|---|---|
| AFCL 2 | Cayman Islands | $3,005,810 |
| AFCL 2 | Cayman Islands | $21,500,000 |
| AFCL 2 | Cayman Islands | $34,646,254 |
| **AFCL 2 Total** | | **$59,152,064** |
| AFCL 5 | Cayman Islands | $1,035,002 |
| AFCL 5 | Cayman Islands | $36,500,000 |
| AFCL 5 | Cayman Islands | $37,059,038 |
| **AFCL 5 Total** | | **$74,594,040** |
| AMF | Cayman Islands | $1,513,325 |
| AMF | Cayman Islands | $42,000,000 |
| AMF | Cayman Islands | $35,651,581 |
| **AMF Total** | | **$79,164,906** |
| **GRAND TOTAL** | | **$ 212,911,010** |

32. In addition to the cash holdings described above, all of which are held in the Cayman Islands, the Debtors have also provided retainer payments in the amounts of $10,000 each to Brown Rudnick LLP, which is located at Seven Times Square, New York, NY, 10036.

33. The Debtors' cash management system is operated by CJA, and is entirely located in the Cayman Islands.

34. Illiquid assets include (a) $24.3 million owed to AFCL by Awal Bank; (b) $19 million owed to AFCL4 by SICL; and (c) Debtor AMF's interest in the Touradji Private Equity Offshore Fund Ltd hedge fund and associated distributions.

**B.    Liabilities**

35. The Debtors have no outstanding secured debt. With respect to other liabilities, the following claims have been asserted against the Debtors in the Cayman Islands Proceedings:

- SIFCL has asserted a claim against AFCL4 in the amount of $1,582,299.

- SICL has asserted a claim against AFCL5 in the amount of $1,727,385.42.

- AHAB has asserted a claim against all of the Debtors in the amount of $9.2 billion. This claim is disputed and is the subject of vigorous litigation pending in the Cayman Islands Grand Court. Proofs in relation to this claim were admitted on June 17, 2011, for the nominal sum of $1.

- Awal Bank has asserted a claim against AFCL2 in the amount of $117,536,206.50.

- Awal Bank has asserted a claim against AFCL3 in the amount of $38,386,421.49.

- Awal Bank has asserted a claim against AFCL4 in the amount of $42,762,769.69.

- Awal Bank has asserted a claim against AFCL5 in the amount of $174,328,762.09.

- Awal Bank has asserted a claim against AF1F in the amount of $159,990,009.74.

- Awal Bank has asserted a claim against AMF in the amount of $159,990,009.74.

36. The Debtors hold the following inter-debtor claims in the Cayman Islands Proceedings:

- AFCL holds a claim against AFCL4 in the amount of $5,925.60.
- AFCL5 holds a claim against AF1F in the amount of $9,147,718.71.
- AF1F holds a claim against AMF in the amount of $159,990,009.74.
- AFCL5 holds a claim against AMF in the amount of $9,147,718.71.

**C.    Causes of Action**

37. The single cause of action currently pending is an action brought by AHAB in the Cayman Islands Grand Court, against each of the Debtors and others, which cause of action is being vigorously defended. See Cayman Islands Grand Court, Cause No. FSD 54 of 2009. I am not aware of any other pending causes of action against any of the Debtors.

**III.    THE NEED FOR RECOGNITION**

38. I believe that recognition of the Cayman Islands Proceedings as "foreign main proceedings" will enhance and facilitate my, and the other Petitioners', abilities to fulfill our duties as the Debtors' official liquidators to realize and distribute the assets of the Debtors in a fair and orderly manner, in accordance with the Cayman Companies Law. Specifically, foreign main recognition under Chapter 15 will advance our efforts by, among other things: (i) affording the Petitioners the right to seek discovery in relation to recovery and protection of the assets of the Debtors; (ii) enabling the Petitioners to examine witnesses, take evidence or obtain information concerning the Debtors' assets, affairs, rights, obligations or liabilities, and (iii) providing a means to ensure that assets and recoveries in the United States will be distributed in an orderly and equitable manner through the Cayman Islands Proceedings in accordance with the Cayman Companies Law.

IV. **THE PETITIONERS AND THE CAYMAN ISLANDS PROCEEDINGS MEET THE REQUIREMENTS OF "FOREIGN REPRESENTATIVES" AND "FOREIGN PROCEEDINGS" UNDER THE BANKRUPTCY CODE**

A. **The Petitioners are "Foreign Representatives" Within the Meaning of Section 101(24) of the Bankruptcy Code**

39. I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

40. I submit that my role as a JOL satisfies the above definition of "foreign representative." As one of the Debtors' court-appointed liquidators, I am duly authorized and empowered by the Cayman Islands Court under the Supervision Orders to administer the liquidation of the Debtors' assets and affairs as well as to act as the duly authorized representative of the Cayman Islands Proceedings. For the same reasons, it is my opinion that my co-Petitioners roles as joint court-appointed liquidators likewise satisfy the above definition of "foreign representative."

B. **The Cayman Islands Proceedings are "Foreign Proceedings" Within the Meaning of Section 101(23) of the Bankruptcy Code**

41. I understand that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

16

42.　I submit that the Cayman Islands Proceedings satisfy the above definition of "foreign proceeding." The Cayman Islands Proceedings are judicial proceedings under the supervision of the Cayman Islands Court, in which the rights of creditors and equity holders vis-à-vis the Debtors will be determined together. The Cayman Islands Proceedings were commenced pursuant to the Cayman Companies Law, which is the Cayman Islands law relating to insolvency and the winding up of companies. Furthermore, the assets and affairs of the Debtors are subject to my full control and supervision as a court-appointed official liquidator, and my actions on behalf of the Debtors are subject to the supervision of the Cayman Islands Court for the purpose of liquidating the Debtors.

## V.　THE DEBTORS' COMI IS IN THE CAYMAN ISLANDS

43.　I understand that, to obtain recognition of the Cayman Islands Proceedings as "foreign main proceedings" under section 1502(4) of the Bankruptcy Code, it must be shown that the Cayman Islands is the "center of main interests," or COMI, of the Debtors.

44.　I further understand that an entity's COMI is located at its central place of administration that is ascertainable by third parties. The Debtors' central place of administration is in the Cayman Islands, and creditors and other third parties have been made aware of that fact. I respectfully submit that the following facts, among others, demonstrate that the Debtors' COMI is in the Cayman Islands:

- Each of the Debtors is being wound up in the Cayman Islands where it is incorporated, registered and regulated.

- The JOLs report to, and have responsibility to, the Cayman Islands Court, which exercises a close watch over the JOLs' management and direction, including approval of their remuneration.

- Two of the JOLs who are responsible for managing the Debtors and directing the investigations into the affairs of the Debtors, and who act for the Debtors solely or jointly, are Cayman Islands residents.

17

- Each of the JOLs is licensed to practice in the Cayman Islands.

- A substantial amount of the work performed for the JOLs in relation to the Cayman Islands Proceedings is performed out of CJA's office in the Cayman Islands.

- The Debtors are and have always been organized under the laws of the Cayman Islands, and their registered office is and always has been located in the Cayman Islands.

- All the governance actions of the Debtors have taken place in the Cayman Islands since 2009.

- The Debtors' bank accounts are all located in the Cayman Islands, including the primary account for operating its business.

- The Debtors' books and records are located at their registered office in the Cayman Islands.

- All assets realized by the Petitioners have been transferred to Cayman Islands bank accounts in the names of the Petitioners.

- The sole outstanding cause of action (brought by AHAB) against the Debtors is pending in the Grand Court of the Cayman Islands.

- Only four creditors currently hold claims against the Debtors, two of which are Cayman Islands companies.

- Each of the Debtors' creditors is a member of at least one Liquidation Committee that was formed in, and has had all meetings in, the Cayman Islands.

- Formal communications with creditors on behalf of the Debtors have primarily originated out of the JOLs' offices in the Cayman Islands.

- From the start of the liquidation proceedings in 2009, all commercial policies of the Debtors have been directed by the JOLs, operating primarily from their offices in the Cayman Islands. Policies determined in the Cayman Islands include those used in gathering assets, establishing bank accounts in the Cayman Islands, and transferring funds to those accounts.

45.  I also understand that, to obtain recognition of the Cayman Islands Proceedings as "foreign nonmain proceedings" under section 1502(5) of the Bankruptcy Code, it must be shown that such proceedings are pending in a country where the debtor has an "establishment." I am

further advised that an "establishment" is any place of operations where the debtor carries out nontransitory economic activity. In the event that the Court does not recognize the Cayman Islands Proceedings as foreign main proceedings, I refer the Court to the facts set forth above as demonstrating that the Debtors carry out nontransitory economic activity, and therefore have an establishment, in the Cayman Islands.

**WHEREFORE**, I respectfully request that this Court enter an Order, substantially in the form attached to the Recognition Petition as Exhibit A, granting the relief requested and such other and further relief as may be just and proper, and

**WHEREFORE**, I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

Executed on this 19th day of March, 2015,

<u>/s/ Bruce Alexander Mackay</u>
Bruce Alexander Mackay, solely in his
capacity as joint official liquidator and duly
appointed foreign representative of the AwalCo
Entities, and not individually